UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DUO-REGEN TECHNOLOGIES, LLC,

    **Plaintiff,**

v.                                                         **Case No: 8:13-cv-2108-T-27TBM**

**4463251 CANADA, INC., BATTERY REJUVENATION OF SOUTH FLORIDA, INC., BATTLIFE, INC., BATTLIFE, USA, JAXIAN TECHNOLOGIES, LLC, ELREHA ELEKTRONISCHE REGELUNGEN GMBH, ELREHA FLORIDA CORPORATION, JEAN PREVOST, JACK GARTNER, STEVE GARTNER, HANXIAN HUANG, ROBERT BEECHLER, JAY WINTER, FERNANDO RODRIGUEZ and ABDUL HAMADEH,**

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are five motions to dismiss (Dkts. 42, 43, 44, 49 & 50). Plaintiff has responded to each (Dkts. 45, 46, 52, 53 & 55). Upon consideration, the Motions are GRANTED.

Plaintiff initially filed a 51 page, seven count Complaint against fifteen defendants, containing 115 paragraphs plus subparts, and attaching 257 pages of exhibits (Dkt. 1). Eleven of the defendants filed four separate motions to dismiss. On October 20, 2013, Plaintiff filed an Amended Complaint under Federal Rule Civil Procedure 15(a)(1)(B) (Dkt. 37). The Amended Complaint contains four counts against fifteen defendants, is 45 pages with 80 paragraphs plus subparts, and attaches 341 pages of exhibits (*id.*). Defendants have filed five separate motions to dismiss the

Amended Complaint based on lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim for relief, and pleading deficiencies (Dkts. 42, 43, 44, 49, 50). Discovery in the case has been stayed pending resolution of the motions (Dkt. 65).

Plaintiff asserts four causes of action: Count I - Violation of Licensing Agreement For Broward County[1] (against 4463251 Canada, Inc. ("4463251")); Count II - Trademark Infringement (against 4463251, Battlife, Inc., Battlife USA, Jean Prevost, Battery Rejuvenation of South Florida, Inc. ("BRSF"), Steve Gartner, and Jack Gartner); Count III - Breach of Exclusive Distribution Agreement for the United States[2] (against 4463251); and Count IV - Theft of Trade Secrets Violation of Fl. Stats. 812.081 and 688.001 *et seq.* (against all Defendants). Defendants move to dismiss the Amended Complaint for various reasons. This Order does not address them all and should not be construed as determining any and all deficiencies with Plaintiff's Amended Complaint.

I. **Subject Matter Jurisdiction**

Plaintiff asserts federal question, diversity, and supplemental jurisdiction, apparently contending that diversity jurisdiction can exist for some defendants and some claims despite the absence of complete diversity (*see* Dkt. 45 at 3-5; Dkt. 37, ¶ 21). In addition, Plaintiff asserts that supplemental jurisdiction--to either the federal question claim or a diversity claim, or both--supplies the jurisdictional basis for its state law trade secrets claim (Dkt. 45 at 5-7; Dkt. 37, ¶ 21).

A. **Diversity Jurisdiction**

"Subject matter jurisdiction based on diversity of citizenship exists in civil actions where the amount in controversy exceeds $75,000 and the action is between 'citizens of different States and

---

[1] Plaintiff refers to this Agreement as the "Broward Agreement."

[2] Plaintiff refers to this Agreement as the "US Agreement."

in which citizens or subjects of a foreign state are additional parties.'" *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (quoting 28 U.S.C. § 1332(a)(3)). "Diversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Id.* The Supreme Court has "consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005); *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff."). Complete diversity in this case is lacking. According to the Amended Complaint, Plaintiff is a citizen of Florida and at least four Defendants are as well (Dkt. 37, ¶¶ 1, 4, 5, 7 & 9).[3] 28 U.S.C. § 1332 cannot, therefore, serve as a basis for subject matter jurisdiction for any claims.

B.  **Federal Question Jurisdiction**

28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff's trademark infringement claim (Count II) arises under the Lanham Act, 15 U.S.C. §§ 1114, 1125, over which there is original federal question jurisdiction.

Plaintiff alleges that Defendants 4463251, Battlife, Inc., and Battlife USA[4] continue to use Plaintiff's mark, "Duo Regen," "or a mark confusingly similar to the DRT mark . . . notwithstanding the notice of the termination of the Broward Agreement and the repudiation of the US Agreement

---

[3] The four Defendants are BRSF, Battlife, Inc., Jaxian Technologies, and Elreha Florida Corporation LLC. In addition, Plaintiff alleges that six of the individual Defendants reside in Florida (Dkt. 37, ¶¶ 14-18, 20).

[4] According to Plaintiff, Battlife USA is a fictitious name under which Battlife, Inc. is doing business (Dkt. 37, ¶ 6).

by 446, Inc" (Dkt. 37, ¶ 58). The US Agreement authorized 4463251 to use the mark but that agreement has allegedly been repudiated (*id.*). While use of the mark is no longer authorized, these Defendants continue to use it on Battlife's website and truck advertising (*id.*, ¶¶ 58-60).

### C. Supplemental Jurisdiction

28 U.S.C. § 1367(c) supplies jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[5] In order for a federal court to invoke supplemental jurisdiction, it must first have original jurisdiction over at least one claim in the action. *Exxon Mobil Corp.*, 545 U.S. at 552. Because incomplete diversity destroys original jurisdiction with respect to all claims, there is nothing to which supplemental jurisdiction can attach. Supplemental jurisdiction must therefore be supplied by the trademark infringement claim.

The question is whether the breach of contract claims (Counts I and III) and trade secrets claim (Count IV) arise out of a common nucleus of operative facts with the trademark infringement claim (Count II).[6] "In deciding whether a state law claim is part of the same case or controversy as a federal issue, [courts] look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (citing *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1566 (11th

---

[5] Section 1367 also gives the Court the discretion to decline to exercise supplemental jurisdiction over a claim arising under state law when: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

[6] Although Plaintiff purports to base jurisdiction over the breach of contract claims on diversity, as discussed, that basis is not available. These two claims, therefore, must attach to the trademark infringement claim through supplemental jurisdiction. As discussed *infra*, the breach of contract claims will be dismissed on other grounds and whether they are sufficiently related under 28 U.S.C. § 1367(c) is not addressed.

Cir.1994)). Claims arising from a "common nucleus of operative fact" necessarily involve "the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *Palmer*, 22 F.3d at 1563-64. Absent a "sufficient nexus" between the federal and state claims, no supplemental jurisdiction exists. *Hudson*, 90 F.3d at 456.

As discussed *infra*, the trademark infringement claim fails to state a claim upon which relief may be granted. Notwithstanding, the trade secrets claim requires consideration of facts distinct from those underlying the trademark infringement claim such that supplemental jurisdiction over it would not exist. The trademark infringement claim involves the alleged infringing use of Plaintiff's mark by Battlife (for which Plaintiff attempts to hold some combination of Defendants liable), whereas the trade secrets claim alleges the misappropriation of Plaintiff's trade secrets by different and unrelated combinations of Defendants. Moreover, the trademark infringement claim allegedly relates to the termination of the Broward Agreement and the repudiation of the US Agreement, both of which were between 4463251 and Plaintiff. The trade secrets claim does not appear on the face of the Amended Complaint to be related to either of those agreements. There is simply no nexus between the federal and state claims. Supplemental jurisdiction over Count IV is therefore lacking.

## II. Failure to State A Claim

### A. Count II - Trademark Infringement

Count II for trademark infringement fails to state a claim for relief against a group of seven Defendants. Plaintiff does not sufficiently allege a concert of action between 4463251, Battlife, Inc., Battlife USA, Prevost, BRSF, S. Gartner, and J. Gartner such that they may all be sued for the infringing acts of Battlife, Inc./Battlife USA. The alleged unauthorized use of Plaintiff's mark is by Battlife, Inc./Battlife USA and pertains to the use of the mark on Battlife's truck advertising and

website (Dkt. 37, ¶¶ 58, 37-33, 37-23, 37-24). None of the allegations tie Battlife, Inc. or Battlife USA to the agreements purportedly authorizing use of the mark, and subsequent revokation/repudiation (*see id.* ("The US Agreement (Exhibit 6) which had originally given 446, Inc. authority to use the mark, had been subsequently revoked by 446's repudiation of the US Agreement."). Neither Battlife, Inc. nor Battlife USA are alleged to be parties to either agreement. Indeed, neither of the Battlife Defendants are named in the claims for breach of these agreements (Counts I and III). And none of the allegations connect the other Defendants named in this count to the alleged infringing acts.

Plaintiff cannot reasonably expect one to sift through 341 pages of exhibits to identify and piece together the missing facts. Nor would it necessarily be proper to consider each exhibit attached to the Amended Complaint. Moreover, vague allegations purporting to make some Defendants responsible for the acts of others, such as "through and with" (*id.*, ¶ 60) are insufficient. And allegations that the individual defendants have "day to day control over" the corporate defendants are conclusory and insufficient. Plaintiff must allege facts to support individual liability and/or liability for the activities of the corporation.[7] This claim, as pled, fails to state a claim for relief.

### III. Agreements to Arbitrate

The two agreements that form the basis of the breach of contract claims are between Plaintiff and 4463251, and include arbitration provisions. (Dkt. 37, ¶¶ 50, 67(ix); Dkt. 37-4; Dkt. 37-6). 4463251 accordingly requests dismissal of these claims. Plaintiff counters that 4463251 waived its

---

[7] For example, an individual is personally liable for infringement if he "actively and knowingly caused the infringement." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). Allegations of "day to day control" do not meet this standard, even at the pleading stage.

right to enforce the arbitration provisions by seeking a Mareva injunction in the Canadian Courts.[8]

Plaintiff also argues that both agreements have been terminated and it is no longer bound by the contractual provisions.

Regarding waiver of the contractual right to arbitrate, the Eleventh Circuit has explained:

> Despite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration, and we apply a two-part test to determine that issue. First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right. A party acts inconsistently with the arbitration right when the party substantially invokes the litigation machinery prior to demanding arbitration. Second, we look to see whether, by acting inconsistently with the arbitration right, that party has in some way prejudiced the other party. To determine whether the other party has been prejudiced, we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process.[9]

*Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (internal citations and quotations omitted).

Applying these principles, Defendant 4463251 did not waive its right to invoke the arbitration provisions by seeking a Mareva injunction. Seeking a Mareva injunction, 4463251 was not inconsistent with the arbitration clauses. "Injunctions that prohibit a party from transferring assets pending resolution of an action in order to ensure the effectiveness of an ultimate remedy are known as 'Mareva injunctions.'" *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak*

---

[8] According to the Complaint, in May 2011, 4463251 and Battlife Laval, Inc. filed a petition for a Mareva injunction with the Canadian Court (Dkt. 37, 48). The injunction froze Plaintiff's assets (*id.*).

[9] The Federal Arbitration Act ("FAA") generally governs the validity of an arbitration agreement and "embodies a liberal federal policy favoring arbitration agreements" and seeks "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation marks omitted). The FAA provides that a written agreement to arbitrate a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1231 & n. 7 (11th Cir. 2012). There is no dispute that Plaintiff's breach of contract claims are covered by the arbitration provisions and Plaintiff does not argue they are invalid.

*Dan Gas Bumi Negara*, 500 F.3d 111, 117 n.8 (2d Cir. 2007) (internal citations and quotations omitted); *S.E.C. v. Cavanagh*, 445 F.3d 105, 118 (2d Cir. 2006) (A Mareva Injunction is available in equity in England and Canada, among other places, and its purpose is to ensure the effectiveness of an ultimate remedy.); *Velasquez v. Metro Fuel Oil Corp.*, 12 CV 1548 NGG LB, 2012 WL 5879446 (E.D.N.Y. Oct. 25, 2012) *report and recommendation adopted in part*, 12-CV-01548 NGG LB, 2012 WL 5879443 (E.D.N.Y. Nov. 20, 2012). Federal courts in the United States lack the power to issue them. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 328–29 (1999); *Cavanagh*, 445 F.3d at 117–18; *Karaha Bodas Co., LLC*, 500 F.3d at 117 n.8. A federal court may, however, issue a preliminary injunction pending arbitration, and thus, seeking injunctive relief in court is not necessarily incompatible with the right to arbitrate. *See Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 350 (7th Cir. 1983); *Talk Fusion, Inc. v. Ulrich*, 8:11-CV-1134-T-33AEP, 2011 WL 2681677, *8 (M.D. Fla. June 21, 2011) *report and recommendation adopted*, 811-CV-1134-T-33AEP, 2011 WL 2681848 (M.D. Fla. July 11, 2011) (recognizing that "a number of courts of appeals have considered the issue and, with one exception, have held that a district court may grant preliminary injunctive relief pending arbitration"); *Wine Not, Int'l v. 2atec, LLC*, 8:06-CV-117-T-23, 2006 WL 1766508, *13 (M.D. Fla. June 26, 2006).

By pursuing an injunction to freeze Plaintiff's assets so that the outcome of an arbitration proceeding would not ring hollow, 4463251 has not "substantially invoked the litigation machinery" such that it waived its right to arbitrate. *See Wine Not, Int'l*, 2006 WL 1766508, at * 13. And Plaintiff has not suffered the kind of prejudice the Eleventh Circuit has said supports waiver of a contractual right to arbitrate. The prejudice Plaintiff claims does not stem from the delay in demanding arbitration or the expense incurred from participating in the litigation process. Rather,

Plaintiff claims prejudice from the deprivation of its financial resources as a result of the Mareva injunction. Plaintiff concedes, however, that 4463251 could not have accomplished the same result under the arbitration agreement (Dkt. 46 at 13).

Furthermore, Plaintiff's allegation that the US Agreement was repudiated and/or terminated does not affect the agreement to arbitrate contained therein. "[T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977). The arbitration provision in the US Agreement does not include any language excluding from arbitrability contract disputes arising after termination.[10]

Accordingly, Count I will be dismissed pursuant to the arbitration provision in the Broward Agreement and Count III will be dismissed pursuant to the arbitration provision in the US Agreement.

Accordingly,

1. The motions to dismiss (Dkts. 42, 43, 44, 49 & 50) are **GRANTED**.

2. Counts I and III of the Amended Complaint are **DISMISSED** in favor of arbitration

---

[10] *See also Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009) (termination of the contract may have no bearing on the right to arbitrate); *Insurdata Mktg. Servs., LLC v. Healthplan Servs., Inc.*, 352 F. Supp. 2d 1252, 1257 (M.D. Fla. 2005) (explaining that "an arbitration provision survives termination of the contract and continues to require arbitration of disputes arising from the pertinent contract").

as to Defendant 4463251 Canada, Inc.[11]

3. Counts II and IV of the Amended Complaint are **DISMISSED** *without prejudice*.

4. Plaintiff is granted leave to file a second amended complaint with the expectation that it complies with the Federal Rules of Civil Procedure and this Order. Failure to comply will result in dismissal of the amended complaint. The second amended complaint shall be filed within **fourteen (14) days** of this Order.

**DONE AND ORDERED** this 2nd day of April, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[11] It is not clear whether Counts I and III are against any other Defendants. To the extent that they are, no determinations are made regarding whether Plaintiff could state a claim for breach of these agreements against any other Defendant or whether the arbitration provisions apply to any other Defendant and Plaintiff may amend its complaint accordingly.